UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER DAVID MIERS,

                Petitioner,

        v.

KATHY MENDOZA-POWERS,

                Respondent.

No. 2:07-CV-441-FVS

ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS

**THIS MATTER** comes before the Court without oral argument based upon Christopher David Miers' petition for a writ of habeas corpus. He is representing himself.  His custodian is represented by Janie Shank McLean.

**I.  BACKGROUND**

At the time his petition was filed, Christopher David Miers (hereinafter "Petitioner") was in custody at Avenal State Prison pursuant to his May 9, 2003, conviction in California's Butte County Superior Court, for forcible rape, rape of an unconscious person, and three counts of unlawful sexual intercourse with minors.  (Ct. Rec. 1 at 2).  The court sentenced Petitioner to an upper term of eight years for the forcible rape, plus two years for the rape of an unconscious person, and an additional consecutive eight month sentence for each of the three unlawful sexual intercourse convictions.  (Ct. Rec. 15 at 2).  Petitioner challenges his sentence.

ORDER - 1

A.  Factual History

The California Court of Appeal, Third Appellate District, described the facts of this case as follows:

Counts 2 & 4: Rape and Unlawful Intercourse with Sophine R.

Sophine R. met defendant in April 1999, when she was 14 years old.  A group of people, including defendant and Sophine, were at the residence of Sophine's friend, Angie. After a time, the group went to defendant's house.  Someone provided alcohol. Sophine did not remember how much she drank, but she was 'pretty drunk' when she went to defendant's bedroom and lay on the bed. He joined her, first lying next to her, and then on top of her. When he began rubbing himself on her, she told him she was a virgin and she was not going to have sex with him.  However, at some point, she passed out.

When Sophine awoke the next morning, her pants were unzipped and her vaginal area was bleeding and hurting.  She accused defendant of having sex with her.  He said he did not remember, but if he did have sex with her, he was sorry.  She forgave him.

Early the next month, Sophine was again at Angie's house when defendant came by.  He and Sophine left together and went to his house where they had sex, although it was painful for her and she told him so.  He told her to 'work at' the soreness and it would get better.  The following month they had sex again, this time in the back seat of his car.

Sophine discovered she was pregnant.  She bickered with defendant because he wanted her to have an abortion but she refused.

After four or five months without seeing each other, defendant telephoned Sophine about 3:00 a.m. one morning.  They met down the street from her house, where they had sex in a van.

In December 1999 or January 2000, defendant and Sophine talked about her getting an abortion.  Defendant told Sophine not to tell the hospital that he was the baby's father because he could 'get in trouble,' since she 'was under age.'

Sophine had defendant's baby in the spring of 2000. Defendant paid child support, and DNA tests confirmed his paternity.

Count 3: Unlawful Intercourse with Shannon G.

Shannon G. had a year-long sexual relationship with defendant, beginning in 1998 when she was 13 years old.  Their

first sexual intercourse occurred at defendant's mother's apartment in Oroville.  Additional acts occurred at the apartment of Shannon's friend, at a Department of Forestry fire station, and at defendant's residence.  Shannon did not have a place to stay, so she did 'whatever [defendant] wanted' in order to stay with him.  Although at trial she testified that the sex acts were consensual, she was a very reluctant witness, and she had previously told a police detective that defendant had sex with her against her will.  He would come up behind her, push her shoulders in an attempt to push her to the ground, begin to disrobe her, and make statements like, 'C'mon, c'mon.'

Count 5: Rape of Kerry C.

In October 1999, 16-year-old Kerry C. cut school with two friends.  They went to defendant's house where Kerry met him for the first time.  A few days later, she returned to his house. They sat on a recliner and kissed.  When she asked to use the bathroom, he directed her past the nearest bathroom to another bathroom at the rear of the house, off of a bedroom.  She walked toward the bathroom but she did not get that far.

Defendant followed Kerry and pushed her down onto the bed, on her back.  He got on top of her, holding her hands by her head.  He said, 'let me,' and tried to remove her pants.  She tried unsuccessfully to get away from him.  They both fell off of the bed and onto the floor.  He put his hand down her pants and put his fingers inside her; she told him to stop and he said, 'Just let me.'  He tore and removed her pants, and then began to have intercourse with her, despite her oral protests and resistance.  Exhibits at trial included the torn pants and photographs of bruises she received on her chest and legs.

When interviewed by a police detective, defendant denied having a sexual relationship with Kerry.  He told the officer he was nervous when underage girls 'showed up,' because he could get into trouble with them.  A blood sample taken from defendant matched the DNA in the semen found on Kerry's pants.

Genevieve S. testified as the victim of an uncharged offense under Evidence Code section 1108.  In November 1997, when she was 14 years old and defendant was 18 years old, she had sex with him at a Butte County residence.

The defense rested without presenting any evidence or testimony.

*People v. Miers*, No. C045764, 2005 Cal. App. LEXIS 10736, *2-6 (Cal.

ORDER - 3

App. 3d Dist. Nov. 21, 2005) (unpublished).[1]

B.  Procedural History

On May 9, 2003, following a jury trial, Petitioner was convicted of forcible rape, rape of an unconscious person, and three counts unlawful sexual intercourse.  (Ct. Rec. 1 at 2).  On December 16, 2003, the trial court sentenced Petitioner to state prison for twelve years, consisting of the upper term of eight years for forcible rape, two years for rape of an unconscious person, and eight months for each of three counts of unlawful sexual intercourse.  (Ct. Rec. 15 at 2). Petitioner appealed from his conviction and sentence to the California Court of Appeal, Third Appellate District.  (Ct. Rec. 1 at 3).  The California Court of Appeal affirmed Petitioner's judgment and sentence.  (*Id.*).  Petitioner thereafter sought review by the California Supreme Court.  (*Id.*).  The California Supreme Court denied Petitioner's request for review on January 25, 2006.  (*Id.*).  On January 10, 2007, Petitioner filed a petition for writ of habeas corpus, requesting federal review.  (Ct. Rec. 1).  Respondent's answer was filed on July 5, 2007.  (Ct. Rec. 15).  Petitioner did not file a traverse.

**II.  ISSUES PRESENTED**

Petitioner claims:

1.  Petitioner's two rape convictions should be reversed because the trial court failed to sua sponte instruct on the two rapes'

---

[1] Under California Rules of Court 8.1115 (2010) "an opinion of a California Court of Appeal . . . that is not . . . ordered published must not be cited or relied on by a court or a party in any other action . . . [except] [w]hen the opinion is relevant under the doctrine[] of law of the case . . . ."

ORDER - 4

lesser included offense of unlawful sexual intercourse, resulting in a violation of Petitioner's rights, and, alternatively, counsel's failure to request the jury instruction constituted ineffective assistance of counsel under the Sixth Amendment;

2. Petitioner's rights to effective assistance of counsel, due process, and equal protection were violated because Petitioner's counsel was not provided with a copy of the trial transcript for preparation of a new trial motion, and, alternatively, Petitioner's counsel was ineffective for failing to request the transcript; and

3. the trial court violated federal law by imposing upper term and consecutive sentences against Petitioner.

(Ct. Rec. 1 at 5-6).

### III.   STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief if a state court adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 399 (2000).  "'Clearly established federal law . . . is the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision.'"  *Anderson v. Terhune*, 516 F.3d 781, 798 (9th Cir. 2008) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003)).

A decision is contrary to clearly established federal law in two circumstances.  First, a state court decision is contrary to clearly established federal law when "the state court applies a rule that contradicts the governing law set forth in [United States Supreme

ORDER - 5

Court] cases." *Williams*, 529 U.S. at 405.  Second, a state court decision is contrary to clearly established federal law when the state court "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-13.  A state court unreasonably applies clearly established federal law when it applies the law in a manner that is "objectively unreasonable." *Id.* at 409.  "AEDPA does not require a federal habeas court to adopt any one methodology in deciding whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 71.

This Court should distinguish, however, between trial errors and structural defects in the trial mechanism.  A "'trial error' [is an] error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented . . . ." *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991).  Habeas relief is warranted only if a trial error, which violates federal law, had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *Bains v. Cambra*, 204 F.3d 964, 977-78 (9th Cir.) *cert. denied*, 531 U.S. 1037 (2000).  Habeas relief is available only where a trial error "resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 449 (1986)).

"[S]tructural defects in the constitution of the trial

ORDER - 6

mechanism," are defects such as "the total deprivation of the right to counsel at trial," "unlawful exclusion of members of the defendant's race from the grand jury," and the denial of "the right to public trial." *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991) (internal citations omitted). "'[S]tructural errors,' might 'affect substantial rights' regardless of their actual impact on an appellant's trial." *United States v. Marcus*, 2010 U.S. LEXIS 4163 (May 24, 2010) (quoting *Puckett v. United States*, 173 L. Ed. 2d 266, 278 (U.S. 2009).

This Court must analyze the last reasoned state court decision to determine whether state courts reached a decision that was contrary to federal law or whether the state courts unreasonably applied federal law. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) *cert. dismissed,* 538 U.S. 919 (2003). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Therefore, this Court "looks through" the California Supreme Court's "silent denial" of Petitioner's claims to the court of appeal's reasoned decision, and reviews that decision under the AEDPA standards. *Id.* at 801; *see, e.g., Gill v. Ayers*, 342 F.3d 911, 917 n.5 (9th Cir. 2003) (a federal habeas court "look[s] through the unexplained California Supreme Court decision[] to the last reasoned decision, the state appellate court's decision, as the basis for the state court's judgment") (internal citation and quotation omitted). Where a state court has issued a reasoned decision explaining why it denied a petitioner's claims for relief, the reviewing court must accord

ORDER - 7

substantial deference to that decision and decide only whether it was contrary to, or resulted in an unreasonable application of, firmly established federal law. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

Here, the last reasoned decision from a California state court is the decision of the California Court of Appeal. *People v. Miers*, No. C045764, 2005 Cal. App. LEXIS 10736 (Cal. App. 3d Dist. Nov. 21, 2005). The California Court of Appeal addressed all of the issues raised by Petitioner for review by this Court. (Ct. Rec. 1). Therefore, this Court shall examine the appellate court's ruling to determine whether there was a decision at the state level that was contrary to, or unreasonable application of, federal law.

**IV.   PETITIONER IS NOT ENTITLED TO HABEAS RELIEF BASED UPON THE ABSENCE OF A JURY INSTRUCTION CONCERNING THE TWO RAPES' LESSER INCLUDED OFFENSE OF UNLAWFUL SEXUAL INTERCOURSE**

Petitioner asserts that his two rape convictions should be reversed because the trial court failed to sua sponte instruct on the two rapes' lesser included offense of unlawful sexual intercourse, because the trial court's failure violated federal law. (Ct. Rec. 1 at 5). In the alternative, Petitioner asserts that counsel's failure to request the jury instruction constituted ineffective assistance of counsel under the Sixth Amendment. (*Id.*).

Petitioner's claim of an improper jury instruction is a "trial error" and not a "structural defect" in the trial mechanism. *See Arizona v. Fulminante*, 499 U.S. 279, 307-11 (1991). The failure to instruct the jury on a lesser offense is a trial error because it is

ORDER - 8

an "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented . . . ." *Id.* at 307-08. Therefore, Petitioner is entitled to habeas relief only if an improper jury instruction had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The United States Supreme Court has expressly reserved judgment on "whether the Due Process Clause would require the giving of such [lesser included offense] instructions in a non-capital case." *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). "[W]hen [United States] Supreme Court precedent reserves an issue, that precedent cannot represent 'clearly established law' on that issue." *Quinn v. Haynes*, 234 F.3d 837, 846 (4th Cir. 2000); *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).

Since *Beck*, federal circuits have split on the question of whether the holding of *Beck*, that due process requires lesser included offense instructions in certain instances for capital cases, applies to non-capital cases. *See Solis v. Garcia*, 219 F.3d 922, 928-29 (9th Cir. 2000). With the intercircuit split on whether the lack of a lesser included offense instruction in a non-capital case violates federal law, any finding of a federal law violation would create a new rule, inapplicable to the present case under *Teague v. Lane*, 489 U.S. 288 (1989) (new rules of criminal procedure are not applicable to cases that became final before the new rule was announced). *See*

ORDER - 9

*Turner v. Marshall*, 63 F.3d 807, 818-19 (9th Cir. 1995), *overruled on other grounds* by *Tolbert v Page*, 182 F.3d 677 (9th Cir. 1999) (*en banc*).

### A.  The trial court did not have a sua sponte duty to instruct the jury on unlawful sexual intercourse

"The trial court must instruct on lesser offenses necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser. . . .  On the other hand, if there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged, such instructions shall not  be given." *People v. Kraft*, 23 Cal. 4th 978, 1063 (Cal. 2000) (internal citation omitted).  "An offense is necessarily included in another if . . . the greater statutory offense cannot be committed without committing the lesser because all of the elements of the lesser offense are included in the elements of the greater.  In other words, when the greater crime cannot be committed without also committing another offense, the latter is necessarily included within the former." *People v. Hughes*, 27 Cal. 4th 287, 365-66 (Cal. 2002) (internal citation and quotation omitted). "Substantial evidence in this context is evidence from which a jury composed of reasonable [persons] could . . . conclude[] that the lesser offense, but not the greater, was committed." *Id.* at 366-67 (internal citation and quotation omitted).

At the time the California Court of Appeal considered Petitioner's appeal, the California Penal Code defined rape as "'an act of sexual intercourse accomplished with a person not the spouse of

ORDER - 10

the perpetrator, under any of the following circumstances:  . . . (2) [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person . . . (4) [w]here a person is at the time unconscious of the nature of the act, and this is known to the accused.'"  *People v. Miers*, No. C045764, 2005 Cal. App. LEXIS 10736, *8 (Cal. App. 3d Dist. Nov. 21, 2005) (quoting Cal. Pen. Code § 261). At the time of appeal, unlawful sexual intercourse was defined as "'an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor.  For the purposes of this section, a 'minor' is a person under the age of 18 years and an 'adult' is a person who is at least 18 years of age.'"  *Miers*, No. C045764, 2005 Cal. App. LEXIS 10736 at *8 (quoting Cal. Pen. Code § 261.5).

Unlawful sexual intercourse is not a lesser offense necessarily included in the offense of rape because rape can be committed without committing unlawful sexual intercourse.  Rape may be committed against a person of any age, whereas unlawful sexual intercourse must be committed against a minor.  The trial court did not have a duty to "instruct on lesser offenses necessarily included in the charged offense" because unlawful sexual intercourse is not necessarily included in rape.  *People v. Kraft*, 23 Cal. 4th 978, 1063 (Cal. 2000).

Petitioner may argue that even though the statutory definition of unlawful sexual intercourse is not necessarily included in the statutory definition of rape, in this case, unlawful intercourse was necessarily included in rape because Petitioner was convicted of

raping sixteen-year-old Kerry C. forcibly and fourteen-year-old Sophine R. while Sophine R. was unconscious.  Petitioner could argue that Petitioner could not commit rape without also committing unlawful sexual intercourse, and, therefore, in Petitioner's case, unlawful intercourse was necessarily included in rape.  *See Hughes*, 27 Cal. at 365-66.  If the offense of unlawful sexual intercourse is necessarily included in the offense of rape, then the trial court must instruct on the lesser offense of unlawful sexual intercourse "if there is substantial evidence the defendant is guilty only of" unlawful sexual intercourse.  *Kraft*, 23 Cal. 4th at 1063 (internal citation omitted).

Even if unlawful sexual intercourse is necessarily included in rape, the trial court did not have a sua sponte duty to instruct the jury on unlawful sexual intercourse vis-a-vis Kerry C. because there was not substantial evidence that Petitioner was guilty only of unlawful sexual intercourse with Kerry C.  Kerry C. testified that Petitioner forced her onto a bed, held her down, ripped her pants, and had sexual intercourse with her against her will.  *Miers*, No. C045764, 2005 Cal. App. LEXIS 10736 at *5.  Kerry C.'s testimony was corroborated by photos of bruises on her chest and legs, by the torn pants, and by DNA evidence identifying Petitioner as the donor of semen found on the pants.  *Id.* at *5-6.  "The defense rested without presenting any evidence or testimony."  *Id.* at *6.  The trial court did not have a sua sponte duty to instruct the jury on unlawful sexual intercourse because all of the elements of rape were present according to undisputed evidence and testimony, and, therefore, there was not substantial evidence that Petitioner was guilty only of unlawful

sexual intercourse.

Even if unlawful sexual intercourse is necessarily included in rape, the trial court did not have a sua sponte duty to instruct the jury on unlawful sexual intercourse vis-a-vis Sophine R. because there was not substantial evidence that Petitioner was guilty only of unlawful sexual intercourse with Sophine R.  Sophine R. testified that she was "pretty drunk," and, though she told Petitioner that she was a virgin and did not want to have sex with Petitioner, she passed out, and, when she awoke, she found her pants unzipped and her vaginal area sore and bleeding.  *Miers*, No. C045764, 2005 Cal. App. LEXIS 10736 at *5.  Regarding whether Sophine R.'s unconsciousness was known to Petitioner at the time of the sexual intercourse, "Sophine admitted on cross-examination that she and defendant were 'both pretty drunk.'" *Id.* at *15.  "[T]rial counsel raised the issue of defendant's intoxication in closing argument."  *Id.* at *16.  "Trial counsel argued: 'He was drunk.  He didn't remember. . . . [Y]ou are called upon to determine whether or not she was too drunk to care, whether or not she had post coital remorse, or whether or not she was in fact passed out . . . [the prosecution is] required to prove this, that he knew that and took advantage of her while she was passed out.  I submit to you, ladies and gentlemen, there is a reasonable doubt as to that.'"  *Id.*  The jury heard about Petitioner's alleged rape of Sophine R., Petitioner's defenses, and about later consensual sexual intercourse between Sophine R. and Petitioner.  *Id.* at *5-16.  The jury found Petitioner guilty of one count of rape vis-a-vis Sophine R. and one count of unlawful intercourse with Sophine R.  (Ct. Rec. 15 at

2).  The jury was exposed to questions regarding whether Petitioner actually raped Sophine R., but there was not substantial evidence that Petitioner was guilty only of unlawful sexual intercourse with Sophine R., and, therefore, the trial court did not have a sua sponte duty to instruct the jury on unlawful sexual intercourse.

B.  The decision of Petitioner's counsel to not request a jury instruction on unlawful sexual intercourse was not ineffective assistance

Petitioner argues that even if the trial court did not breach a sua sponte duty to instruct the jury on unlawful sexual intercourse when instructing the jury on rape, counsel's failure to request the jury instruction constituted ineffective assistance of counsel under the Sixth Amendment.  (Ct. Rec. 1 at 5).  In reviewing a claim of ineffective assistance of counsel, this Court applies a two-part test: "'[f]irst, the defendant must show that counsel's performance was deficient. . . .  Second, the defendant must show that the deficient performance prejudiced the defense.'"  *United States v. Recio*, 371 F.3d 1093, 1109 (9th Cir. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  This Court "'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"  *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

When analyzing the first element of an ineffective counsel claim,

ORDER - 14

whether counsel's performance was deficient, this Court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Counsel's performance is only ineffective if it fails to meet an objective standard of reasonableness under prevailing professional norms. *Id.* at 688.

The second element of an ineffective counsel claim, whether counsel's deficient performance prejudiced the defense, requires a finding "'that counsel's errors [are] so serious as to deprive the defendant of a fair trial.'" *Recio*, 371 F.3d at 1109 (quoting *Strickland*, 466 U.S. at 687). "A defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

Petitioner's counsel was not deficient for failing to request a jury instruction on unlawful sexual intercourse when the jury instruction on rape was given, because there was not substantial evidence that Petitioner was guilty only of unlawful sexual intercourse. "The trial court must instruct on lesser offenses necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser." *People v.*

ORDER - 15

*Kraft*, 23 Cal. 4th 978, 1063 (Cal. 2000) (internal citations omitted).
Counsel is not ineffective for failing to make a meritless request.
*People v. Stratton*, 205 Cal. App. 3d 87, 97 (Cal. App. 1st Dist.
1988).  As described in Part IV, Section 1 of this memorandum,
Petitioner did not offer substantial evidence that he was guilty only
of unlawful sexual intercourse vis-a-vis either Kerry C. or Sophine R.
Therefore, the trial court was not obligated to grant a request for a
jury instruction on unlawful sexual intercourse when giving a jury
instruction on rape.  Petitioner's counsel was not deficient for
failing to make the meritless request of having the trial court give
an unlawful sexual intercourse jury instruction.

Even if Petitioner's counsel was deficient, counsel's performance
did not prejudice Petitioner.  In order to prove prejudice, "[a]
defendant must show that there is a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding
would have been different."  *Strickland*, 466 U.S. at 694.  "[A]
verdict or conclusion only weakly supported by the record is more
likely to have been affected by errors than one with overwhelming
record support."  *Id.* at 696.  In this case, the jury's verdict of
rape was overwhelming supported by a record of uncontradicted evidence
and testimony by the victims of the rapes.  *Miers*, No. C045764, 2005
Cal. App. LEXIS 10736 at *5-6.  Petitioner has failed to prove that
counsel's failure to request a jury instruction on unlawful sexual
intercourse prejudiced Petitioner.

**V.   PETITIONER IS NOT ENTITLED TO HABEAS RELIEF AS A RESULT
OF THE TRIAL COURT'S FAILURE TO PROVIDE PETITIONER'S COUNSEL**

**WITH A COPY OF THE TRIAL TRANSCRIPT FOR PREPARATION OF A NEW TRIAL MOTION OR AS A RESULT OF THE FAILURE OF PETITIONER'S COUNSEL TO REQUEST THE TRANSCRIPT**

At a post verdict hearing at the trial court, Petitioner indicated that he wished to pursue a new trial motion based on ineffective representation by his trial counsel. *Miers*, No. C045764, 2005 Cal. App. LEXIS 10736 at *12-13. Petitioner asserts that his convictions should be reversed because the trial court erred by not furnishing the trial transcript to his new counsel for the purpose of preparing a new trial motion. (Ct. Rec. 1 at 5). In the alternative, Petitioner asserts that counsel's failure to request the transcript constituted ineffective assistance of counsel under the Sixth Amendment. (*Id.*).

The failure to provide a copy of the trial transcript for a new trial motion is a "trial error" and not a "structural defect" in the trial mechanism. *See Arizona v. Fulminante*, 499 U.S. 279, 307-11 (1991). "A structural error . . . is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Johnson v. United States*, 520 U.S. 461, 468 (1997) (internal citation and quotation omitted). "[T]he State must . . . provide indigent prisoners with the basic tools of an adequate defense or appeal . . . ." *Britt v. North Carolina*, 404 U.S. 226, 227 (1971). "Where the state completely fails to provide an indigent defendant with a transcript of a mistrial for use in connection with a second trial, [the United States Supreme Court] would likely find a structural error, requiring automatic reversal." *Kennedy v. Lockyer*,

ORDER - 17

379 F.3d 1041, 1053 (9th Cir. 2004). In *Griffin v. Illinois*, the Court held that "[d]estitute defendants must be afforded as adequate [an] appellate review as defendants who have money enough to buy transcripts." 351 U.S. 12, 19 (1956). In *Britt v. North Carolina*, the Court elaborated on the states' duty to provide trial transcripts for use on retrial. 404 U.S. at 226.

Unlike *Griffin* and *Britt*, in this case, Petitioner did not seek a copy of the transcript for an appeal or retrial. Petitioner sought the transcript only for the purpose of preparing a motion for new trial. (Ct. Rec. 1 at 5). "A new trial motion is an integral part of the trial itself, and . . . in passing on such a motion, the trial court, unlike an appellate court, may reweigh the evidence and judge the credibility of witnesses." *People v. Lopez*, 1 Cal. App. 3d 78, 83 (Cal. App. 5th Dist. 1969) (internal citations omitted). The trial court's denial of the transcript for preparation of a new trial motion is a trial error because it was an error in the trial process itself. Therefore, the trial court's denial of the transcript may entitle Petitioner to habeas relief, but only if the denial had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

A.  The trial court's failure to provide Petitioner's counsel with a copy of the trial transcript for preparation of a new trial motion did not have a substantial and injurious effect or influence on the jury's verdict

"An indigent defendant is not entitled, as a matter of absolute

right, to a full reporter's transcript of his trial proceedings for his lawyer's use in connection with a motion for a new trial; but, since a motion for a new trial is an integral part of the trial itself, a full reporter's transcript must be furnished to all defendants . . . whenever necessary for effective representation by counsel at that important stage of the proceeding.  There are no mechanical tests for deciding when the denial of transcripts for a motion for new trial is so arbitrary as to violate due process or to constitute a denial of effective representation.  Each case must be considered on its own peculiar facts and circumstances." *People v. Bizieff*, 226 Cal. App. 3d 1689, 1700 (Cal. App. 5th Dist. 1991) (internal citations and quotation omitted).

The trial transcript was not necessary for effective representation by counsel for Petitioner's new trial motion.  "The gist of the [new trial] motion was that trial counsel had been deficient for having failed to more fully investigate and interview the victim-witnesses who, just prior to trial, were recanting and being intimidated by the prosecution.  The motion was supported by the declaration of an investigator who had interviewed Sophine, Shannon and the trial investigator.  Because the motion was based on events outside the courtroom, rather than events at trial, a transcript of the trial proceedings was not essential to the claim.*" People v. Miers*, No. C045764, 2005 Cal. App. LEXIS 10736, *14 (Cal. App. 3d Dist. Nov. 21, 2005).

Petitioner also argues "that, had his new counsel examined the transcript, he could have discerned that the prosecutor's direct

ORDER - 19

examination of Sophine consisted almost entirely of leading questions, without any objection or stipulation by his trial counsel.  However, new counsel would also have noted that Sophine was reluctant to testify and admitted to having told conflicting versions of events. Trial counsel could have perceived that Sophine was hostile to the prosecution and that an objection to the form of the questions would be futile, in that it would merely formalize her status as a hostile witness who may be led.  New counsel, in turn, would have perceived that trial counsel had not been ineffective and that there was no ground for a new trial." *Id.* at *14-15.

Petitioner also "claims a review of the trial transcript would have revealed 'that evidence of [his] intoxication had [been] presented to the jury' . . . [and therefore] new counsel should have evaluated whether trial counsel had been ineffective for having failed to raise an intoxication defense to count 2, which required his knowledge of Sophine's unconsciousness." *Id.* at *15.  "However, the transcript shows that trial counsel raised the issue of defendant's intoxication in closing argument." *Id.* at *15-16.

"Finally, [Petitioner] claims new counsel could have discovered that trial counsel had made a tactical decision to refuse lesser included offense instructions, and later argued to the jury that defendant was guilty of a lesser included offense." *Id.* at *16.  As described in Part IV of this memorandum, however, Petitioner was not entitled to a lesser included offense instruction.

The trial transcript was not necessary for effective representation by counsel for Petitioner's motion for new trial, and,

threrefore, the trial court's failure to provide Petitioner's counsel with a copy of the trial transcript for preparation of a new trial motion did not have a substantial and injurious effect or influence in determining the jury's verdict.  Petitioner is not entitled to habeas relief for the trial court's denial of the transcript.

B.  The failure of Petitioner's counsel to request a copy of the trial transcript for preparation of a new trial motion did not render counsel ineffective

Petitioner's counsel was not deficient for failing to request the trial transcript.  "An indigent defendant is not entitled, as a matter of absolute right, to a full reporter's transcript of his trial proceedings for his lawyer's use in connection with a motion for a new trial; but . . . a full reporter's transcript must be furnished to all defendants . . . whenever necessary for effective representation by counsel . . . ."  *People v. Bizieff*, 226 Cal. App. 3d 1689, 1700 (Cal. App. 5th Dist. 1991).  Counsel is not ineffective for failing to make a meritless request.  *People v. Stratton*, 205 Cal. App. 3d 87, 97 (Cal. App. 1st Dist. 1988).  As described in Part V, Section 1 of this memorandum, none of the theories which Petitioner suggested as a basis for a new trial required the trial transcript.  Obtaining the trial transcript was not necessary for effective representation by counsel, and, therefore, counsel was not deficient for failing to make a meritless request for the transcript.

Even if Petitioner's counsel was deficient, counsel's performance did not prejudice Petitioner.  In order to prove prejudice, "[a] defendant must show that there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  As described in Part V, Section 1 of this memorandum, the trial transcript was not necessary for effective representation by counsel.  The trial court, therefore, could have denied counsel's request for the transcript.  Counsel's failure to request the transcript did not prejudice Petitioner because Petitioner has failed to prove that the result of the trial would have been different if counsel requested the transcript.

**VI.  THE IMPOSITION OF UPPER TERM AND CONSECUTIVE SENTENCES AGAINST PETITIONER DOES NOT ENTITLE PETITIONER TO HABEAS RELIEF**

Petitioner contends that the imposition of upper term and consecutive sentences against him violated federal law.  (Ct. Rec. 1 at 6).  The trial court sentenced Petitioner to twelve years in state prison, consisting of the upper term of eight years for forcible rape, two years for rape of an unconscious person, and eight months for each of three counts of unlawful sexual intercourse.  (Ct. Rec. 15 at 2).

A.  The trial court's imposition of an upper term sentence does not violate federal law

At the time that Petitioner was sentenced, Cal. Penal Code § 1170(b), part of California's "Determinate Sentencing Law" or "DSL," specified that "'[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.'"  *Butler v. Curry*, 528 F.3d

624, 630 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 767 (2008) (quoting Cal. Penal Code § 1170(b) before amendment in 2004).

"'[C]ircumstances in aggravation and mitigation must be established by a preponderance of the evidence,' and '[s]election of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation.'" *Butler*, 528 F.3d at 631 (quoting Cal. R. Ct. 4.420(b) before amendment in 2007).

Aggravating factors included, but were not limited to, "'[f]acts relating to the crime, whether or not charged or chargeable as enhancements, including the fact that:  [t]he victim was particularly vulnerable[;] . . . [t]he defendant induced a minor to commit or assist in the commission of the crime[;] . . . [t]he defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed[;] . . . . [and] [t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism.'" *People v. Black* ("*Black I*"), 35 Cal. 4th 1238, 1247 n.4 (Cal. 2005) (quoting Cal. R. Ct. § 4.421(a) before amendment in 2007).  Also considered aggravating factors were "'[f]acts relating to the defendant, including the fact that:  [t]he defendant was on probation or parole when the crime was committed[;] . . . [t]he defendant's prior performance on probation or parole was unsatisfactory[;] . . . [and] [a]ny other facts statutorily declared to be circumstances in aggravation.'"  *Black I*, 35 Cal. 4th at 1247 n.4 (quoting Cal. R. Ct. §§ 4.421(b), 4.421(c) before amendment in 2007).

In *People v. Black* ("*Black I*"), 35 Cal. 4th 1238 (2005), the California Supreme Court held that California's DSL and the upper term sentencing procedure was not invalidated by the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004).  In *Cunningham v. California*, 549 U.S. 270, (2007), however, the United States Supreme Court vacated *Black I* and held that by placing sentence-elevating fact finding within the judge's province, California's DSL violates a defendant's Sixth and Fourteenth Amendment rights to trial by jury.  The Court found that in all material respects, California's DSL resembled the sentencing systems invalidated in *Blakely* and *Booker*.

In *Butler v. Curry*, 528 F.3d 624 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 767 (2008), the Ninth Circuit Court of Appeals found that *Cunningham* did not announce a new rule of federal law according to the standard created by *Teague v. Lane*, 489 U.S. 288 (1989), and therefore, could be applied retroactively on collateral review.  In the case at bar, Petitioner's petition for review was denied by the California Supreme Court on January 25, 2006.  (Ct. Rec. 1 at 3). Petitioner's petition therefore became final ninety days later, on April 21, 2006, when the period for a petition for writ of certiorari expired. *United States v. Garcia*, 210 F.3d 1058, 1059-1060 (9th Cir. 2000).  At that time, *Blakely* (2004), *Booker* (2005), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), represented clearly established law that sentencing schemes that raise the maximum possible sentencing term based on facts not found by a jury violate the constitutional rights of a defendant.  *Butler*, 528 F.3d at 639.  Consequently, with regard

to Petitioner, *Cunningham* did not announce a new rule of federal law and may be applied retroactively to him on collateral review.

Nonetheless, Petitioner's upper term sentence does not violate the Sixth Amendment.  Prior convictions are excepted from the requirement that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury. *Apprendi*, 530 U.S. at 490.  Under California law, only one aggravating factor is necessary to set the upper term as the maximum sentence. *Butler*, 528 F.3d at 641; *People v. Black* ("*Black II*"), 41 Cal. 4th 799 (2007).  In *Black II*, the California Supreme Court concluded that a judge may impose an upper term sentence based on a defendant's prior conviction in conformity with *Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998), which held that the fact of a prior conviction need not be pleaded in an indictment or proved to a jury beyond a reasonable doubt.

The prior conviction exception, however, is narrow.  "First the fact of a prior conviction is the only fact that both increases a penalty beyond the statutory maximum and can be found by a sentencing court.  Second, the narrow prior conviction exception applies only to facts directly reflected in the documents of conviction, not to secondary facts that are derived or inferred from a prior conviction or from the conviction documents.  Third, as the prior conviction exception is justified by the reliability of court documents created as part of a process with Sixth Amendment safeguards, it does not extend to facts that may be proven only by reference to documents that were not developed as a result of such a process." *Butler*, 528 F.3d

at 645 (internal citations and quotations omitted).  The Sixth
Amendment considerations of the third requirement prohibit the narrow
prior conviction exception from applying "to past convictions as a
juvenile or to prior removal proceedings, because those underlying
proceedings lack full Sixth Amendment protections."  *Id.* at 644
(internal citation omitted).  In *Butler*, the Ninth Circuit Court of
Appeals applied the narrow prior conviction exception by claiming that
it allows "a finding by a judge of a prior conviction for an
aggravated felony [to] be the basis for raising the maximum term in an
illegal reentry case . . . ."  *Id.* at 646 n.13 (citing *United States
v. Calderon-Segura*, 512 F.3d 1104, 1111 (9th Cir. 2008)).

Here, the aggravating factor the trial court found vis-a-vis
Petitioner meets the narrow prior conviction exception, and,
therefore, Petitioner's upper term sentence does not violate federal
law.  On April 29, 1998, the Butte County Superior Court placed
Petitioner on probation for three years following Petitioner's no
contest plea to unlawful sexual intercourse with Genevieve S.  *People
v. Miers*, No. CO45764, 2005 Cal. App. LEXIS 10736, *1-2 (Cal. App. 3d
Dist. Nov. 21, 2005); Ct. Rec 15 at 2.  "The trial court found that
defendant had violated his probation by committing the offenses"
underlying the judgment now attacked by Petitioner.  *Miers*, No.
CO45764, 2005 Cal. App. LEXIS 10736 at *1; Ct. Rec. 15 at 1 n.1.

Petitioner's prior conviction of unlawful sexual intercourse
warrants raising the maximum term for Petitioner's forcible rape of a
minor more than the scenario approved in *Butler* of an aggravated
felony being the basis for raising the maximum term for an illegal

reentry, because in Petitioner's case, the prior conviction and the crime underlying the upper level sentence both concern a similar violation:  a sexual crime involving a minor.  In this case, the trial judge based the upper term sentence on Petitioner's prior conviction of unlawful sexual intercourse, which was directly reflected in the documents of conviction.  *See Miers*, No. CO45764, 2005 Cal. App. LEXIS 10736 at *1.  The judge noted that "[i]n case No. CM010252, defendant was on probation for unlawful sexual intercourse with Genevieve S." *Id.* at *1-2.  The trial judge did not base the upper term sentence on secondary facts that were derived or inferred from a prior conviction or from the conviction documents.  *See id.*

Petitioner's prior conviction occurred when he was an adult and bears no indication of violating Sixth Amendment safeguards. Petitioner's unlawful sexual intercourse with Genevieve S. transpired "[i]n November 1997, when she was 14 years old and [Petitioner] was 18 years old . . . ."  *Id.* at *6.

The aggravating factor the trial court found vis-a-vis Petitioner meets the narrow prior conviction exception, and, therefore, Petitioner's upper term sentence does not violate federal law.  The sentence was not contrary to, and did not involve an unreasonable application of, clearly established law as determined by the United States Supreme Court.  Therefore, no habeas relief is warranted.

B.  The trial court's imposition of consecutive sentences does not violate federal law

In *Oregon v. Ice*, 129 S.Ct. 711 (2009), the United States Supreme Court held that judges have discretion to determine whether sentences

for discrete offenses are imposed consecutively or concurrently under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).  The Court found that "[t]he decision to impose sentences consecutively is not within the jury function that 'extends down centuries into the common law.'  Instead, specification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures."  *Ice*, 129 S.Ct. at 717 (quoting *Apprendi*, 530 U.S. at 477).

Before *Ice* may be applied to the case at hand, however, the issue of retroactivity must be addressed by applying the standard created by *Teague v. Lane*, 489 U.S. 288 (1989).  *See Butler v. Curry*, 528 F.3d 624, 633 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 767 (2008) (quoting *Beard v Banks*, 542 U.S. 406, 412 (2004)) (stating that when issues of retroactivity arise "'federal habeas courts *must* apply *Teague* before considering the merits' of a claim").[2]  The first step in applying *Teague* is to determine whether the new decision expressed a "new rule" or an "old rule" with regard to precedent in force at the time Petitioner's conviction became final.  *Teague*, 489 U.S. at 301; *Butler*, 528 F.3d at 633-34.  While "new rules" only apply retroactively on direct review, "old rules" are retroactively applicable on both collateral as well as direct review.  *Whorton v. Bockting*, 549 U.S. 406, 416 (2007); *Butler*, 528 F.3d at 633.  "Old rules" are those which would have been controlled by precedent

---

[2] "*Teague* was a plurality opinion, but the *Teague* rule was adopted by a majority of the Court shortly thereafter in *Penry v. Lynaugh*, 492 U.S. 302 (1989)."  *Butler*, 528 F.3d at 633 n.7 (citing *Danforth v. Minnesota*, 128 S.Ct. 1029, 1033 n.1 (2008)).

existing at the time a habeas petitioner's conviction became final. *Teague*, 489 U.S. at 301; *Butler*, 528 F.3d at 633-34.

The rule expressed in *Ice* is an "old rule" under the *Teague* analysis because the rule is dictated by precedent as set forth in the *Apprendi* line of cases. *Ice*, 129 S.Ct. at 716-17. According to *Ice*, an analysis under *Apprendi* and its progeny requires a determination of whether the particular situation at issue is "within 'the domain of the jury . . . by those who framed the Bill of Rights.'" *Id*. at 717 (quoting *Harris v. United States*, 536 U.S. 545, 557 (2002)). Thus, an analysis of whether an issue falls under the *Apprendi* rule must be done through an examination of the historical record. *See id.* This was already the required analysis on April 21, 2006, when Petitioner's conviction became final. *See Ice*, 129 S.Ct. at 716-17; *United States v. Garcia*, 210 F.3d 1058, 1059-1060 (9th Cir. 2000).

In *Ice*, the Court performed a thorough examination of the considerations necessary to analyze the issue at hand through the scope of then-existing Supreme Court precedent including *Apprendi*, its progeny, and necessary historical practices. *Ice*, 129 S.Ct. at 717-719. Based on analysis of its own precedent (most of which was in force in 2006), the Court held that judges may themselves decide the facts necessary to impose consecutive sentences. *Id.* at 714-15. *Ice* was dictated by precedent that was in force when Petitioner's conviction became final, and, therefore, it is an "old rule" that may be retroactively applied to the case at hand. *See Teague*, 489 U.S. at 301; *Butler*, 528 F.3d at 633-34. Applying *Ice* to Petitioner's claim, the decision of the California Court of Appeals was not contrary to,

nor an unreasonable application of, federal law as interpreted by the United States Supreme Court.  Accordingly, Petitioner is not entitled to habeas relief.

**IT IS HEREBY ORDERED:**

1. Christopher David Mier's petition for writ of habeas corpus (**Ct. Rec. 1**) is **DENIED.**

2. The Court will not consider a motion for reconsideration.

3. The Court declines to issue a certificate of appealability because, in the Court's opinion, reasonable jurists would not find the Court's ruling debatable or wrong.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to file this order, enter judgment in accordance with this order, furnish copies to Petitioner and counsel for Respondent, and close the case.

**DATED** this ___13th___ day of September, 2010.

                    s/ Fred Van Sickle
                    Fred Van Sickle
            Senior United States District Judge

ORDER - 30